BEFORE THE SECOND DIVISION, FEBRUARY 6, 1963

No. 67410.—J. M. Altieri *v.* United States, protest 61/17744 (San Juan).

LAWRENCE, Judge: An importation described on the export invoice as "HOT ROLLED ANNEALED DE-OXIDISED NON-ARSENICAL COPPER CIRCLES WITH BAND SAWN EDGES" was classified by the collector of customs in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides for articles not specially provided for, partly or wholly manufactured, composed

wholly or in chief value of copper, and duty was assessed thereon at the rate of 22½ per centum ad valorem. An additional tax on the copper content was imposed pursuant to the Internal Revenue Code (26 U.S.C. § 4541 (2)), the correctness of which is not disputed.

Plaintiff contends that the merchandise should be granted entry free of duty pursuant to the provision of paragraph 1658 of said act (19 U.S.C. § 1201, par. 1658), as copper in plates, not manufactured.

The pertinent text of the statutes involved in this controversy is here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

  *  *  *  *  *  *  *

  Composed wholly or in chief value of iron, steel, lead, copper * * * (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
   Woven wire fencing * * *

  *  *  *  *  *  *  *

   Other * * * _____ 22½% ad val.

Paragraph 1658 of said act:

Copper ore; regulus of, and black or coarse copper, and cement copper; old copper, fit only for remanufacture, copper scale, clippings from new copper, and copper in plates, bars, ingots, or pigs, not manufactured or specially provided for.

When the case was called for trial, counsel for the respective parties orally stipulated and agreed—

* * * that the imported merchandise consists of two articles in chief value of copper produced by hot rolling and annealing into plates one-half inches [*sic*] thick as specified by the importer. These articles were then cut into circles of 129 inches in diameter according to the specifications of the importer. The edges are band-sawn.

Adversary counsel, in their briefs, both point to the following two cases in support of their respective claims, *B. F. Drakenfeld & Co.* v. *United States*, 15 Treas. Dec. 365, T.D. 28920 (1908), and *Sciaky Bros., Inc.* v. *United States*, 40 Cust. Ct. 134, C.D. 1972 (1958).

In the latter case, a petition for rehearing was denied, 40 Cust. Ct. 529, Abstract 61845, and an appeal, *United States* v. *Sciaky Bros., Inc.* (No. 4961), 46 CCPA 151, was dismissed.

It appears from the decision of the court, in the *Drakenfeld* case, that the merchandise consisted of copper plates which had been planished for use in the engraver's art. The record also established that "* * * a somewhat elaborate process of grinding and polishing, * * *" which enhanced the value of the plates was necessary to prepare them for the engraver's use. Further, as stated by the court—

* * * in their condition as imported the plates have been advanced by a process of manipulation—a patented process—from the status of copper in plates not manufactured. * * *

The problem before the court, in that case, was whether the merchandise above described was within the purview of the language in paragraph 532 of the Tariff Act of 1897 (30 Stat. 151), which reads as follows:

532. Copper in plates, bars, ingots, or pigs, and other forms, not manufactured or specially provided for in this Act.

Commenting upon the language of paragraph 532, the court observed:

* * * In our opinion, the qualifying words "not manufactured" as found in that paragraph were intended to specifically limit such provisions to plates which, like all the other articles mentioned in the paragraph, to wit, "bars, ingots, or pigs," are crude or raw materials, and not articles advanced beyond that state.

The *Scialky* case, *supra*, related to an importation described as rectangular-shaped pieces of copper, measuring ½'' by 19'' by 51⅛'', which had been classified by the collector as articles, not specially provided for, partly or wholly manufactured, composed wholly or in chief value of copper, in paragraph 397 of the Tariff Act of 1930. The record disclosed that the commodity was produced by rolling copper cake 2 feet square and approximately 4 inches thick and by shearing to the dimensions above described for reasons of economy. It was in that condition that the commodity acquired the status of copper plate or copper in plates and that in its imported condition it was not copper in plates, manufactured.

Of importance here are two cases cited by plaintiff, *United States* v. *Kid and Watson*, 8 U.S. 1 (1807), and *United States* v. *Potts and others*, 9 U.S. 284 (1809).

The *Kid* case had been certified from the Circuit Court of the District of Pennsylvania upon the question whether round copper bars, round copper plates, and round copper plates turned up at the edges were subject to duty or were exempt from duty as copper in plates by the Act of July 20, 1789, and the Act of August 10, 1790.

It appears from the report that the jury found a special verdict which was, in substance, that said articles were of no use in the form in which they were imported, but were worked up as a raw material, "And that all the aforesaid articles come under the description of bars and plates." The Court stated:

Admitted that the case was not to be supported, on the part of the United States, and that judgment must be given for the defendants.

Of greater significance here is the *Potts* case, *supra*, which presented the question whether certain round copper plates, also described as "flat bottoms," and certain round copper plates turned up at the edges, described as "raised bottoms," were to be considered as manufactured copper or as a raw material, plain copper plates. We quote from the opinion of the Court as follows:

* * * That the round copper plates * * * are cut from large sheets which are made by pressure under a roller, but are never imported in the size or shape in which they come from the roller. That it is a great convenience and saving to the manufacturer here that the sheets of copper should come in a round rather than in a square shape, avoiding great waste by clipping and repeated heats. * * * That the round copper plates turned up at the edge are raised at the edge from four to five inches. * * *

\*         \*         \*         \*         \*         \*         \*

This case differs from that of the *United States* v. *Kid & Watson*, 4 *Cranch*, 1. in one circumstance only. In that case it does not appear but that the *copper plates turned up at the edge* were imported under the denomination of *copper plates*, and the jury expressly found that they came under that description. But in the present case they were imported under the denomination of *"raised bottoms."* [Italics quoted.]

The Court then stated the real question before it was whether the raised bottoms were to be considered as manufactured copper or as much a raw material as plain copper plates.

Chief Justice Marshall stated "The opinion of this court is, that *copper plates turned up at the edge* are exempt from duty, although imported under the denomination of *raised bottoms.*" [Italics quoted.] Further, the Court observed:

It appears to have been the policy of the United States to distinguish between raw and manufactured copper. From the facts stated, the copper in question cannot be deemed manufactured copper within the intention of the legislature.

The Court certified to the court below that *"round copper bottoms turned up at the edge* are *not* liable to the payment of duty within the meaning of the several acts of congress."   [Italics quoted.]   The several acts of Congress to which reference is made are the Act of July 4, 1789, Act of August 10, 1790, Act of May 2, 1792, and the Act of June 7, 1794.

Defendant herein seeks to minimize the relevancy and importance of the *Kid* and *Potts* cases, *supra,* asserting that they are not pertinent to the issue herein and that, since they involve acts of Congress dating from 1789 to 1794, they relate to provisions "too remote in time and too dissimilar from the provision before the Court for consideration herein to be of material aid."

We are of the opinion, however, that the factual and legal aspects of the *Kid* and *Potts* cases are so similar to those of the case at bar that they are controlling in principle and quite in harmony with the *Sciaky* case, *supra.*

From the record before us in this case, it appears that nothing has been done to the imported articles other than hot rolling and annealing copper into plates and cutting them by means of a bandsaw into circles of 129 inches in diameter.

We, accordingly, find that the importation in question consists of copper in plates, in circular form, not manufactured, and, therefore, entitled to free entry as copper plates, not manufactured, within the meaning of that provision in paragraph 1658 of the Tariff Act of 1930.

For the reasons stated and upon the authority of the *Kid, Potts,* and *Sciaky* cases, *supra,* we sustain plaintiff's claim for free entry of the subject merchandise.

Judgment will issue in accordance with the views above expressed, directing the collector of customs to reliquidate the entry accordingly.