(C.D. 2975)

J. M. ALTIERI *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 19, 1967)

*Fiddler, Gonzalez & Rodriguez* (*Salvador E. Casellas* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The subject merchandise consists of 18 copper plates, circular in form, exported from England, consigned to the

plaintiff herein for account of the Abarca Warehouses Corp., Santurce, Puerto Rico. Involved are three separate importations of identical merchandise which are covered by the three protests enumerated above.

On arrival at Puerto Rico, the customs officials classified said merchandise as articles or wares, not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of copper, in paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and imposed duty thereon at the rate of 22½ per centum ad valorem. In addition thereto, a copper tax of 1.275 cents per pound was applied to the importations in accordance with section 4541(2) of the Internal Revenue Code, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Whereas the copper tax assessment pursuant to the Internal Revenue Code is not contested, plaintiff does protest the customs duty assessment and classification of the merchandise in paragraph 397 of the Tariff Act of 1930, as modified. It is plaintiff's position that the merchandise at bar should properly have been classified as copper plates, unmanufactured, which are *eo nomine* provided for within the free entry provisions of paragraph 1658 of the Tariff Act of 1930.

Jose R. Carreras was called to testify on behalf of plaintiff. He identified himself as chief engineer and a member of the board of Abarca Warehouses Corp. His company manufactures industrial equipment, particularly sugar-mill equipment, and has foundry works and machine shops for general repairs.

Carreras testified to his familiarity with the copper plates, circular in form, which were the subject of decision by this court in *J. M. Altieri* v. *United States*, 50 Cust. Ct. 197, Abstract 67410. Received in evidence as plaintiff's illustrative exhibit 3 was a photograph of one of the plates which was the subject of decision in Abstract 67410. On being asked to explain what was done to the plate to fit it for the use shown in said photograph, the witness stated that, after importation, a hole 4½ feet in diameter was cut in the center, said inner edge being made "from an angle" so it could be riveted to a copper center tube of the same diameter, namely 4 feet 6 inches. Then 600 borings, 4 inches in diameter, were made, into which tubes would be inserted. On completion of the various processing steps, the copper plates became finished parts of vacuum pans for sugar-mill machinery.

On being shown another photograph, which was received in evidence as plaintiff's illustrative exhibit 2, the witness stated that the flat object in the lower right-hand corner of the photograph illustrates

the copper plates presently in issue, explaining, however, that the plates as imported do not have any holes except the center hole measuring 24⅛ inches in diameter, the other perforations indicated on exhibit 2 having been made subsequent to importation.

It was further disclosed by the testimony of Carreras that the instant merchandise was ordered to the following specifications—18 hot-rolled, deoxidized, nonarsenical copper circles, 11 feet 8 inches outside diameter, 24⅛ inches inside diameter, and ⅝-inch thick. The copper plates in the instant importations differ from the copper plates which were the subject of Abstract 67410 in that in the present case the outside diameter of the plates measured 140 inches as compared to 129 inches. The thickness of the plates differs in that the instant plates are ⅝-inch thick whereas the plates in the former case were ½ inch in thickness. The main difference was, however, in the fact that, whereas the plates in the previous importation were flat or solid, the copper plates at bar had a 24⅛-inch circle cut from the center thereof. It was explained that the center hole in the instant plates was cut at the time the outer circumference was cut prior to shipment to Puerto Rico, and that the cutting of both the outside perimeter and of the inner circle was done by bandsaw, which provides a rough cut.

The 18 copper plates at bar, ordered according to specifications, were to be used to manufacture 9 sugar-mill evaporators, each evaporator requiring 2 plates. After the plates were imported into Puerto Rico, 4,366 borings, 1%₃₂ inches in diameter, were made. The center hole was used in the condition as imported for insertion therein of a down-take tube of 24-inch diameter, which tube is affixed to the plate by brass angle fixtures.

Plaintiff's brief expresses the issue in this case as "whether or not the cutting of copper plates into circular shapes with a hole in the center using a bandsaw, constitutes a manufacturing operation which removes the merchandise from the purview of paragraph 1658 and makes it classifiable under the provisions of paragraph 397."

As to whether the cutting of copper plates into circular shapes by means of a bandsaw constitutes a manufacturing operation on the copper plates so as to exclude them from the free entry provisions of paragraph 1658 of the tariff act was answered in the negative in the *Altieri* case, Abstract 67410, cited and referred to above.

The main question to be decided, therefore, to quote the plaintiff's brief, "is whether the cutting of a center hole by the English exporter in the same manner as the outer circular edge, makes the circular copper plates herein 'manufactured' and outside the purview of paragraph 1658."

On this pivotal point, the court finds the record before it to be lacking in sufficient credible evidence to support plaintiff's claim. And it is well established in customs law that it falls to the party challenging the tariff classification of imported merchandise to prove not only said classification is wrong but also that its contention is correct. *Atkins, Kroll & Co.* v. *United States*, 50 CCPA 62, C.A.D. 821.

The evidence presented in the present case fails to convince the court that the cutting of the center hole in the instant plates, even though done with a bandsaw, was not an advancement of the copper plates to the point that they were no longer copper plates, unmanufactured, within the purview of paragraph 1658 of the tariff act.

From the testimonial record before the court, it is discerned that the center hole cutting of 24⅛ inches was done in accordance with the customer's specifications; that, when said plates were subjected to further processing steps in Puerto Rico in connection with the manufacture of evaporators for use in the sugar industry, the center hole could be used just as it came from the manufacturer abroad; and that to said plates were joined by bronze angle fixtures copper tubes having a diameter of 24 inches, which tubes were brought to Puerto Rico from the United States.

The fact that the removal of a 24⅛-inch diameter circle from the original 140-inch diameter copper plates resulted in a saving to the importer in cost per pound of the copper plates and in transportation charges from England, the point of exportation, to Puerto Rico does not offset the fact that testimony has not been adduced to convince the court that, when said cutting was done to specification to serve a subsequent manufacturing purpose, it did not constitute an advancement of the instant merchandise beyond the status of copper plates, not manufactured.

For failure on the part of plaintiff in the instant case to show by credible evidence that the cutting of a 24⅛-inch circle from the center of the imported copper plates did not in fact advance the plates from the condition of copper plates, unmanufactured, and after due consideration of the cases cited by the adversary parties in their briefs, all claims in the protests are overruled.

Judgment will be entered accordingly.